1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Building Innovation Industries, L.L.C., an)   No. CV 06-1859-PHX-NVW
    Arizona limited liability company,        )
10                                             )   **ORDER**
                    Plaintiff,                 )
11                                             )
    vs.                                        )
12                                             )
                                               )
13  Yelena  Onken,  individually  and  as)
    Personal Representative of the Estate of)
14  Ronnie Dale Onken; Shari Howard, an)
    individual,                               )
15                                             )
                    Defendants.                )
16                                             )
                                               )
17  _____)

18          Pending before the court is Defendants' Joint Motion for Award of Attorneys' Fees

19  (Doc. # 23).

20  **I.    Background**

21          Plaintiff Building Innovation Industries, LLC ("Building Innovations") is an Arizona

22  company  engaged  in  the  manufacture  and  erection  of  pre-fabricated  residential  and

23  commercial structures.  Defendant Yelena Onken is the widow of Ronnie Dale Onken and

24  personal representative of her late husband's estate.  Defendant Shari Howard is the assignee

25  of the interests of Yelena Onken and the estate in the patent application at issue.

26          In May 2004, Ronnie Onken contracted with Building Innovations to help design a

27  new type of insulated structural panel for use in the company's construction business.

28  Building Innovations allegedly hired Onken on a retainer basis and specifically to make use

1   of his inventive faculties.  Onken explained to Building Innovations that he could commit

2   approximately 20 hours per week to the design project.  He required payment of $50 per hour

3   for his efforts and $35 per hour for the use of his drafting personnel.  In the course of the

4   business relationship, Onken assisted other Building Innovations employees in successfully

5   developing a "hat channel design" for the company's panels.  Building Innovations

6   ultimately paid Onken $33,108.82 in consideration for his work.

7        Sometime between May 2004 and July 2005, and without Building Innovations's

8   knowledge or consent, Onken contacted Paul N. Katz of the law firm Baker, Botts, LLP to

9   prepare a patent application for the new panel design.  The application, filed with the United

10  States Patent and Trademark Office on November 18, 2005, lists Onken and his wife Yelena

11  as the inventors and Defendant Howard as the assignee.  Howard and others acting in concert

12  with him now allegedly sell devices that make use of the device described in the application.

13       Plaintiff alleged in its original complaint that, although it never entered into a written

14  contract with Onken concerning invention ownership, Onken conceded ownership by means

15  of an implied contract when he accepted an offer of employment to invent for the company.

16  Plaintiff further alleged that Howard's sale of devices that make use of the disputed design

17  violates the Arizona Trade Secrets Act.  The complaint therefore sought a determination that

18  Defendants have no legal interest in the subject of the patent application, and that, in the

19  event a patent is issued, Building Innovations is its exclusive and legal owner (Count I).  The

20  complaint also sought an injunction barring any further sales of devices that make use of the

21  disputed design (Count II).  Defendants moved to dismiss both counts under Federal Rule

22  of Civil Procedure 12(b)(6).

23       On October 18, 2006, Building Innovations moved for leave to file an amended

24  complaint.  This motion and the briefs on the Defendants' motions to dismiss were jointly

25  addressed in a hearing on October 20, 2006.  Noting ambiguity in the complaint concerning

26  Onken's employment status–i.e., whether he was an employee or an independent

27  contractor–and the centrality of that status to the issue of patent ownership, Building

28

1   Innovations was ordered to file an amended complaint specifying with particularity the

2   nature of Onken's employment relationship with Building Innovations.

3          Building Innovations complied with this order by filing an amended complaint on

4   October 31, 2006.  The Amended Complaint alleged that Onken was hired by the company

5   as an independent contractor.  In light of precedent indicating that independent contractors

6   hired to invent generally retain ownership over inventions they create in the course of their

7   employment, Building Innovations dropped its original request for a declaration that it owned

8   the panel design.  Counts one and two of the Amended Complaint instead respectively

9   alleged that Onken's patent application was invalid because it was based on prior art and

10  misled the United States Patent and Trademark Office by representing that Onken was the

11  inventor and owner of the panel design.  Count three of the Amended Complaint repeated the

12  original complaint's claim regarding trade secrets.

13         Defendants responded to the Amended Complaint with another motion to dismiss.

14  The motion argued for the dismissal of counts one and two on the ground that invalidity is

15  an affirmative defense that applies to patents, not patent applications.  The motion also

16  argued that count three should be dismissed because it lacked specificity concerning the

17  nature of the claimed trade secrets and the alleged trade secrets were already in the public

18  domain.  One day after Defendants filed their motion to dismiss, Building Innovations

19  voluntarily dismissed the Amended Complaint pursuant to Federal Rule of Civil Procedure

20  41(a)(1).

21         Defendants Howard and Yelena Onken now respectively move for $19,650 and

22  $18,707 in attorney's fees under A.R.S. § 12-341.01(A).  They alternatively move for an

23  award under 35 U.S.C. § 285, A.R.S. § 12-341.01(C), A.R.S. § 12-349, or the court's

24  "inherent power" to grant fees.

25  **II.    Analysis**

26         In response to the motion, Building Innovations raises two principal objections.  First,

27  it contends that attorney's fees may not be awarded because its voluntary dismissal pursuant

28  to Federal Rule of Civil Procedure 41(a)(1) terminated the court's jurisdiction over the case.

1    Second, it argues that even if jurisdiction is present, fees may not be awarded under A.R.S.

2    § 12-341.01(A) because, absent a judgment on the merits, there cannot be a "successful

3    party."  The objections are examined below.

4         **A.    Jurisdiction**

5         Federal Rule of Civil Procedure 41(a)(1) establishes that an action may be dismissed

6    without prejudice by the plaintiff without order of court by "filing a notice of dismissal at any

7    time before service by the adverse party of an answer or of a motion for summary judgment,

8    whichever first occurs."  "Once the notice of dismissal has been filed, the district court loses

9    jurisdiction over the dismissed claims and may not address the merits of such claims or issue

10   further orders pertaining to them."  *Duke Energy Trading & Mktg., LLC v. Davis*, 267 F.3d

11   1042, 1049 (9th Cir. 2001).  Nevertheless, even after Rule 41(a) terminates jurisdiction on

12   the merits, jurisdiction may persist over collateral matters. *Cooter & Gell v. Hartmarx Corp.*,

13   496 U.S. 384, 396 (1990); *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 445 (9th

14   Cir. 1992).

15        Building Innovations's voluntary dismissal did not terminate jurisdiction over the

16   motion for attorney's fees. "[I]t is clear that an award of attorney's fees is a collateral matter

17   over which a court normally retains jurisdiction even after being divested of jurisdiction on

18   the merits" by a Rule 41 dismissal. *Moore*, 981 F.2d at 445.  Thus, a decision regarding the

19   "imposition of attorney's fees . . . may be made after the principal suit has been terminated"

20   under Rule 41(a)(1). *Cooter & Gell*, 496 U.S. at 396.

21        This conclusion is consistent with the purpose of Rule 41(a)(1), which was designed

22   exclusively to curb abuses facilitated by a plaintiff's ability under prior rules to dismiss her

23   case at any point in the litigation up until the entry of the verdict.  The Rule was not intended

24   to effect jurisdiction over issues such as fees and sanctions. *See Cooter & Gell*, 496 U.S. at

25   397 (explaining that Rule 41(a) was "not designed to give a plaintiff any benefit other than

26   the right to take one . . . dismissal without prejudice").  Building Innovations's contrary

27   interpretation is unreasonable because it would effectively transform a rule designed to

28

- 4 -

1    restrict plaintiffs into a vehicle by which plaintiffs may evade otherwise appropriate

2    sanctions and costs.

3          Building Innovations attempts to distinguish *Moore* and *Cooter & Gell* on the ground

4    that they respectively involved jurisdiction over a motion for fees pursuant to 28 U.S.C. §

5    1447(c) and a motion for sanctions under Federal Rule of Civil Procedure 11, rather than a

6    motion for attorney fees under Arizona law and 35 U.S.C. § 285.  The distinction is

7    immaterial.  While it is true that those cases involved different statutes than those presently

8    at issue, neither case held that the disputed fee and sanction requests were collateral because

9    of the text and purpose of 28 U.S.C. § 1447(c) or Rule 11.  Rather, both generically

10   explained that attorney fees and sanctions are by nature collateral to the merits and therefore

11   properly within a district court's jurisdiction even after a dismissal under Rule 41(a).  *Moore*,

12   981 F.2d at 445; *Cooter & Gell*, 496 U.S. at 396.

13         To the extent that the text and purpose of 28 U.S.C. § 1447(c) and Rule 11 were

14   relevant to the holdings in *Moore* and *Cooter & Gell*, it was only because jurisdiction could

15   not persist if it were precluded by the fee statute itself.  In this case, however, nothing in the

16   text of the relevant statutes precludes jurisdiction over fee awards after a dismissal on the

17   merits; while the statutes restrict the type of dispute in which fees may be awarded, they do

18   not establish any temporal limitations on a court's ability to extend such an award.  *See* 35

19   U.S.C. § 285; A.R.S. § 12-341.01(A).  Moreover, because defendants will in many cases

20   incur substantial legal costs prior to a plaintiff's voluntary dismissal under Rule 41, collateral

21   jurisdiction over fees post-dismissal facilitates § 12-341.01's express purpose of

22   "mitigat[ing] the burden of the expense of litigation to establish a just claim or a just

23   defense."  A.R.S. § 12-341.01(B).

24         The two cases that Building Innovations cites in support of its position are readily

25   distinguishable.  Neither *Commercial Space Management Company, Inc. v. The Boeing*

26   *Company, Inc.*, 193 F.3d 1074 (9th Cir. 1999), nor *Davis*, 267 F.3d 1042, involves or

27   addresses whether Rule 41 terminates jurisdiction over collateral matters such as attorney's

28   fees.  While those cases do contain rather categorical language that one could construe as

1    terminating all forms of jurisdiction upon dismissal, *see, e.g.*, *Commercial Space Mgmt. Co.*,

2    193 F.3d at 1077 ("The effect [of a Rule 41 dismissal] is to leave the parties as though no

3    action had been brought."), that language was utilized in circumstances that did not

4    contemplate a dispute over a collateral matter and, if construed as Building Innovations

5    suggests, would operate in tension with the Supreme Court's holding in *Cooter & Gell*.

6          For these reasons, Building Innovations's voluntarily dismissal under Federal Rule

7    of Civil Procedure 41(a) does not divest the court of jurisdiction to determine whether

8    attorney's fees should be awarded.

9          **B.**    **35 U.S.C. § 285**

10          The Patent Act provides that a "court in exceptional cases may award reasonable

11    attorney fees to the prevailing party." 35 U.S.C. § 285. Section 285 permits fees "for time

12    incurred in the litigation of legitimate patent claims" and non-patent "issues . . . so

13    intertwined with . . . patent issues as to make section 285 applicable to the case in its

14    entirety." *Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994).

15    Several factors determine the propriety of an award for claims that lie within the scope of this

16    statute: "(1) The party awarded attorney's fees must be the 'prevailing party'; (2) attorney's

17    fees may be awarded only in 'exceptional' cases; (3) a court 'may' award or deny attorney's

18    fees in its discretion; and (4) attorney's fees awarded must be 'reasonable.'" *Monolith*

19    *Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 294 (9th Cir.

20    1969).

21          Plaintiff's claims concerning the hired-to-invent doctrine and the invalidity of

22    Onken's patent application are "patent claims" subject to the terms of § 285. The hired-to-

23    invent doctrine holds that, although an individual will typically own the exclusive rights to

24    his own inventions, an employer will own an employee's invention if the employee was

25    "hired to invent . . . or solve a particular problem" and produced the invention in the course

26    of the employment relationship. *Banks v. Unisys*, 228 F.3d 1357, 1359 (Fed. Cir. 2000); *see*

27    *also United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 187 (1933). The doctrine

28    applies exclusively to the issue of patent ownership and displaces some contract law

- 6 -

1   principles touching the same conduct.  Rather than considering all the circumstances in

2   finding contract terms implied in fact, the hired-to-invent doctrine employs a bright-line rule

3   that a contract term transferring invention ownership to an employer may not be inferred

4   when the inventor is an independent contractor.  Such a contract term may be implied when

5   the inventor is a traditional employee.  *Allegheny Steel & Brass Corp. v. Elting*, 141 F.2d

6   148, 149 (7th Cir. 1944).

7          The claims concerning the invalidity of Onken's patent application also fall within the

8   scope of § 285 because they hinge on issues that inherently implicate federal patent law.  The

9   first claim questioned the novelty of the panel design, an issue that "lies at the heart of the

10  patent system."  1 Chisum on Patents § 3.01.  Similarly, Onken's purported fraud on the

11  Patent Office is properly characterized as a patent issue subject to § 285 because it relies on

12  the requirements of candor and good faith that are imposed on prospective patentees by

13  federal law.  *See* 37 C.F.R. § 1.56; *see also W.R. Grace & Co. v. Western U.S. Indus.*, 608

14  F.2d 1214, 1219 (9th Cir. 1979) ("Cases involving fraud, 'calculated recklessness,' or bad

15  faith in dealings with the Patent Office are precisely the 'exceptional' cases for which section

16  285 is designed.").

17         It is a closer question whether Building Innovations's claim for misappropriation of

18  trade secrets lies within the scope of § 285.  Clearly, the claim is not a patent claim in its own

19  right, as it was alleged under Arizona's statute governing trade secrets.  *See* A.R.S. § 44-401.

20  However, the claim may be so closely "intertwined" with a patent claim as to position it

21  within the bounds of the fee statute.  *Interspiro USA, Inc.*, 18 F.3d at 933.  In order for

22  Building Innovations to establish misappropriation as alleged in this case, it must have first

23  established its ownership of the disputed information via the patent-law-based hired-to-invent

24  doctrine; if Building Innovations did not own the information by way of that doctrine,

25  Defendants could not have misappropriated it.  *See* A.R.S. § 44-401. The vitality of the trade

26  secrets claim thus hinged on the application of patent law.  Fees have been awarded in

27  connection with non-patent claims under § 285 in similar circumstances.  *Cf. Interspiro USA,*

28  *Inc.*, 18 F.3d at 933 (holding that fees incurred in connection with a claim for the breach of

1    a settlement agreement fell within § 285 because the issue of whether the agreement had been

2    breached "turn[ed] on" the patent-law question of whether the defendant's device infringed

3    the plaintiff's patent).

4         Ultimately, it need not be decided whether Plaintiff's trade secrets claim falls within

5    the scope of 35 U.S.C. § 285.  Finding that § 285 applies to the claims involving the hired-to-

6    invent doctrine and the invalidity of Onken's patent application, and momentarily assuming

7    the same with respect to the trade secrets claim, the federal statute does not permit any fee

8    award.  Section 285 limits fees to "exceptional cases."  This language requires a party

9    requesting fees to show by clear and convincing evidence "[b]ad faith, fraud or other

10   significant misconduct which would make it grossly unjust for the prevailing party to be left

11   with the burden of his litigation expenses."  *SSP Agric. Equip., Inc. v. Orchard-Rite Ltd.*, 592

12   F.2d 1096, 1102 (9th Cir. 1979); *see also Reactive Metals & Alloys Corp. v. Esm, Inc.*, 769

13   F.2d 1578, 1582 (Fed. Cir. 1985).

14        The record does not show that Plaintiff engaged in bad faith, fraud, or other

15   misconduct such as to render this case "exceptional."  At most, Building Innovations brought

16   unpersuasive claims based on ambiguous allegations concerning Onken's employment status.

17   While responding to those claims was undoubtedly burdensome and inconvenient for

18   Defendants, the mere fact that Plaintiff's lawsuit was unsuccessful does not support a fee

19   award, and Defendants provide no basis for concluding that Plaintiff acted in bad faith.  *See*

20   *Postx Corp. v. Secure Data in Motion, Inc.*, 2006 U.S. Dist. LEXIS 52540, at *11-15 (N.D.

21   Cal. July 19, 2006); *Victus, Ltd. v. Collezione Europa U.S.A., Inc.*, 26 F. Supp. 2d 772, 787-

22   88 (M.D.N.C. 1998).  Even assuming for the sake of argument that Plaintiff was negligent

23   in its initiation and management of the litigation, such conduct is different in kind from that

24   which warrants fees under § 285.  *Compare Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1358

25   (9th Cir. 1980) ("[S]imple negligence does not constitute an 'exceptional' case and therefore

26   will not support an award of attorney's fees.") *with Garbell, Inc. v. The Boeing Co.*, 546 F.2d

27   297, 300 (9th Cir. 1976) (upholding a fee award because the record was "replete with

28   circumstantial evidence of intransigence and vexatious behavior by the plaintiffs which ran

1   up the costs") *and Ashcroft v. Paper Mate Mfg. Co.*, 434 F.2d 910, 914 (9th Cir. 1970)

2   (upholding a fee award against a party that "knowingly and willfully concealed" information

3   to mislead opposing counsel, misrepresented the character of evidentiary exhibits, and

4   "unnecessarily prolonged" the taking of depositions).

5          **C.     Arizona Revised Statutes § 12-341.01(A)**

6          Defendants alternatively request fees under A.R.S. § 12-341.01(A).  Under this

7   statute, "reasonable attorney fees" may be awarded to the "successful party" in "any

8   contested action arising out of a contract, express or implied."  The statute is substantive in

9   nature, *see In re Larry's Apartment, LLC*, 249 F.3d 832, 838 (9th Cir. 2001), and applies to

10  claims arising out of contract terms that are implied-in-fact, *Barmat v. John & Jane Doe*

11  *Partners A-D*, 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987).  Fees awarded under § 12-

12  341.01(A) "need not equal or relate to the attorney fees actually paid or contracted, but . . .

13  may not exceed the amount paid or agreed to be paid."

14         **1.     The Patent Claims**

15         The request for fees under § 12-341.01(A) with respect to Plaintiff's patent claims is

16  misplaced.  Congress may preempt state law expressly through statutory language, or

17  implicitly by creating a "comprehensive regulatory scheme that occupies the entire field

18  being regulated, leaving no room for state or local supplementation."  *Ctr. for Bio-Ethical*

19  *Reform, Inc. v. City and County of Honolulu*, 455 F.3d 910 (9th Cir. 2006).  In addition,

20               [e]ven where Congress has not entirely displaced state
                 regulation in a specific area, state law is pre-empted to the
21               extent that it actually conflicts with federal law. Such a conflict
                 arises when compliance with both federal and state regulations
22               is a physical impossibility, or where state law stands as an
                 obstacle to the accomplishment and execution of the full
23               purposes and objectives of Congress.

24  *Pac. Gas & Elec. Co. v. State Energy Res. Convserv. & Dev. Comm'n*, 461 U.S. 190, 204

25  (1983).  In evaluating the possible preemption of state law, the "purpose of Congress is the

26  ultimate touchstone."  *Cipollone v. Liggett Group*, 505 U.S. 504, 506 (1992).  Because

27  Congress has attempted in the Patent Act to "balance[] innovation incentives against

28

- 9 -

1  promoting free competition . . . state laws upsetting that balance are preempted." *G.S.*

2  *Rasmussen & Assocs. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992).

3  Federal patent law, including 35 U.S.C. § 285, does not expressly preempt state law.

4  *See In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1046 (9th Cir. 2001).  However, 35 U.S.C.

5  § 285 implicitly preempts the application of § 12-341.01(A) to the patent claims in this case.

6  Section 285 permits attorney's fees with respect to such claims, but only in "extraordinary

7  cases."   In utilizing this language, Congress aimed to preclude the routine recovery of

8  attorney's fees in patent cases not involving fraud, bad faith, or other significant misconduct.

9  *Monolith Portland Midwest Co.*, 407 F.2d at 294; *Orchard-Rite Ltd.*, 592 F.2d at 1102; *see*

10  *also* S. Rep. No. 1503, 79th Cong., 2d Sess. (1946) ("It is not contemplated that the recovery

11  of attorney's fees will become an ordinary thing in patent suits."); *Mach. Corp. of Am. v.*

12  *Gullfiber AB*, 774 F.2d 467, 471-72 (Fed. Cir. 1985) (noting that the language in the Senate

13  Report to the Patent Act of 1946 applies to the current Act insofar as it discusses attorney's

14  fees).  By contrast, § 12-341.01(A) permits a fee award to the "successful party" in "any

15  action" arising out of a contract.  "Successful" has been construed broadly and does not

16  require adjudication on the merits.  *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370,

17  392, 710 P.2d 1025, 1047 (1985).  Additionally, because § 12-341.01's purpose is simply to

18  "mitigate the burden of the expense of litigation to establish a just claim or a just defense,"

19  A.R.S. § 12-341.01(C), fees awarded under the statute need not be predicated on any form

20  of misconduct, *see, e.g.*, *Mark Lighting Fixture Co. v. General Elec. Supply Co.*, 155 Ariz.

21  65, 70-71, 745 P.2d 123, 128-29 (Ct. App. 1986) (awarding fees after the plaintiff voluntarily

22  dismissed its case), *vacated on other grounds*, 155 Ariz. 27, 745 P.2d 85 (1987).

23  In light of the text and purpose of 35 U.S.C. § 285, an award of fees under A.R.S. §

24  12-341.01(A) in connection with Plaintiff's patent claims is preempted as directly conflicting

25  with federal law.  As explained above, misconduct by Plaintiff has not been shown.  Thus,

26  although § 12-341.01(A) by its terms would apply to the hired-to-invent claim, such an

27  award would conflict with the clear purpose of 35 U.S.C. § 285 and allow Defendants to

28  circumvent the heightened textual requirements of the federal statute. The Supremacy Clause

1  of the United States Constitution does not permit such a result.  *See Maryland v. Louisiana*,
2  451 U.S. 725, 746 (1981).

3  This conclusion is not based on the simple fact that Plaintiff's alleged contract term
4  happened to involve a patent.  That nexus with patent law is, on its own, an insufficient basis
5  from which to infer a congressional purpose of preemption.  *See Aronson v. Quick Point*
6  *Pencil Co.*, 440 U.S. 257, 262 (1979) ("State law is not displaced merely because the contract
7  relates to intellectual property which may or may not be patentable; the states are free to
8  regulate the use of such intellectual property in any manner not inconsistent with federal
9  law.").  Rather, preemption is implied with respect to the directly conflicting application of
10  § 12-341.01(A) in this case because the hired-to-invent doctrine and the rules governing the
11  validity of a patent application are completely federalized areas of law.  Although the hired-
12  to-invent doctrine has some of the flavor of a state-law contract claim, it applies exclusively
13  in the context of patent cases and, as explained above, to some extent departs from state-law
14  principles of contract.  The uniquely federal nature of these claims places them firmly within
15  the contemplation of 35 U.S.C. § 285 and federal patent policy.

16  That 35 U.S.C. § 285 preempts the application of A.R.S. § 12-341.01(A) to Plaintiff's
17  federal patent claims in this case is apparent not only from the direct conflict between the
18  statutes, but also from the broader purposes of the Patent Act, which carefully "balance[s]
19  innovation incentives against promoting free competition."  *G.S. Rasmussen*, 958 F.2d at
20  904.  Allowing defendants to recover attorney fees against unsuccessful plaintiffs in patent
21  cases routinely and absent significant misconduct would disturb the delicately balanced
22  patent regime. The congressionally chosen calculus of litigation incentives and disincentives
23  for claiming or challenging patent monopolies would be disarranged if less stringent state
24  laws on attorney's fees could oust 35 U.S.C. § 285.  Such a result would also undermine
25  Congress's goal of nationwide uniformity in patent law by varying the possibility of fee
26  recovery with the jurisdiction in which the action arose.  *See Fla. Prepaid Postsecondary*
27  *Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 645 (1999); *Bonito Boats v. Thunder*
28  *Craft Boats*, 489 U.S. 141, 162 (1989).

- 11 -

1    This case might have been different if it had involved trademark law. In *Attrezzi, LLC*

2  *v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006), a trademark defendant challenged an award

3  of attorney's fees under state law as preempted by federal statute.  The state law in *Attrezzi*

4  provided fees as a matter of course to the successful party, while the federal statute only

5  permitted fee awards in "exceptional cases."  *Compare* 15 U.S.C. § 1117(a) ("The court in

6  exceptional cases may award reasonable attorney fees to the prevailing party.") *with* N.H.

7  Rev. Stat. Ann. § 358-A:10 ("[A] prevailing plaintiff shall be awarded the costs of the suit

8  and reasonable attorney's fees, as determined by the court.").  *Attrezzi* held that the federal

9  statute did not preempt the applicable state law.  436 F.3d at 40-42.  However, in reaching

10 this outcome, it was emphasized that the applicable federal law "primarily provide[d] a

11 federal forum for what is in substance a traditional common-law claim." *Id.* at 42.  Because

12 "state substantive regimes [were] (ordinarily) not preempted" by that law, it was explained,

13 the same should be true for applicable state remedial statutes.  *Id.*

14    In contrast to the trademark dispute in *Attrezzi*, Plaintiff's claim involving the hired-

15 to-invent doctrine and the invalidity of Onken's patent application are not based on

16 traditional, state-law causes of action.  Rather, the rules underlying those claims exist within

17 the exclusively federal body of authority that is the patent law.  Unlike federal trademark law,

18 the Patent Act *does* ordinarily preempt relevant state substantive regimes.  *See In re*

19 *Cybernetic Servs., Inc.*, 252 F.3d at 1046 (explaining that it has been held "on numerous

20 occasions . . . that the Patent Act preempts . . . state law that grants patent-law protection to

21 a product"). *Attrezzi* is therefore distinguished as involving claims for which preemption was

22 not intended.

23              **2.    The Trade Secrets Claim**

24    Even if Plaintiff's claim regarding trade secrets is not so closely "intertwined" with

25 a true patent claim as to fall within the scope of 35 U.S.C. § 285, fees also may not be

26 awarded on that claim under § 12-341.01(A).  Attorney's fees may be recovered by

27 successful parties under § 12-341.01(A) only to the extent that they were incurred litigating

28 claims "arising out of a contract." *See Ramsey Air Meds, LLC v. Cutter Aviation, Inc.*, 198

- 12 -

1   Ariz. 10, 13, 6 P.3d 315, 318 (Ct. App. 2000); *True Ctr. Gate Leasing, Inc. v. Gate, LLC*, 427

2   F. Supp. 2d 946, 951-52 (D. Ariz. 2006).  "The mere existence of a contract somewhere in

3   [a] transaction is not sufficient to support a fee award" with respect to a claim that does not

4   itself allege the breach or invalidity of a contract.  *A.H. v. Ariz. Prop. & Cas. Ins.*, 190 Ariz.

5   526, 529, 950 P.2d 1147, 1150 (1997).  To warrant fees under the statute, claims not

6   sounding directly in contract must be so "intrinsically related" to an asserted claim for breach

7   or contract as to "not exist but for the breach of contract."  *Sparks v. Republic Nat'l Life Ins.*

8   *Co.*, 132 Ariz. 529, 543-44, 647 P.2d 1127, 1141-42 (1982).

9           Defendants may not recover fees under § 12-341.01(A) in connection with their

10  defense to the trade secrets claim because that claim did not "arise out of a contract."

11  Whether a claim "arises out of a contract" is determined by the abstract nature of the claim,

12  rather than whether it happens to hinge on predicate contract questions in the specific

13  circumstances of one case.  *Compare Morris v. Achen Constr. Co.*, 155 Ariz. 512, 514, 747

14  P.2d 1211, 1213 (1987) (holding that fees could not be recovered under § 12-341.01(A) for

15  the tort of fraudulent inducement because that tort "can be committed" without there also

16  being a breach of contract) *with Sparks*, 132 Ariz. at 544, 647 P.2d at 1142 (concluding that

17  the tort of bad faith arises out of a contract because, as a theoretical matter, it "cannot be

18  committed" absent the existence of an insurance contract and a breach thereof).  Because

19  none of the multiple forms of misappropriation established in Arizona's trade secret statute

20  require the breach or even presence of a contract, *see* A.R.S. § 44-401(2), it cannot be said

21  that the trade secrets claim is one "arising out of a contract."

22          For these reasons, no fees will be awarded under A.R.S. § 12-341.01(A).  Plaintiff's

23  argument that Defendants were not "successful" parties within the meaning of the statute

24  need not be addressed.

25          **D.      Other Statutes**

26          Defendants also tersely request fees pursuant to A.R.S. §§ 12-341.01(C) and 12-349

27  and the court's "inherent power."  The first statute provides that fees shall be awarded when

28  a claim "constitutes harassment, is groundless and is not made in good faith."  A.R.S. § 12-

- 13 -

1   341.01(C). The latter similarly requires fees when a party brings a claim "without substantial

2   justification" or for the purpose of harassment, or otherwise abuses the litigation process.

3   A.R.S. § 12-349(A).

4        Both of the cited statutes raise the same preemption question addressed above with

5   respect to A.R.S. § 12-341.01(C). However, the issue of preemption need not be examined

6   to conclude that fees may not be awarded under §§ 12-341.01(C) and 12-349. Because

7   Plaintiff did not engage in misconduct, neither statute applies even on its own terms. The

8   fact that Defendants fail to provide any specific analysis as to the justification for an award

9   under either §§ 12-341.01(C) or 12-349 makes such an award particularly unwarranted. In

10  light of the absence of misconduct by Plaintiff, the court also declines to exercise any

11  inherent authority to award fees.

12       IT IS THEREFORE ORDERED that Defendants' Joint Motion for Award of

13  Attorneys' Fees (Doc. # 23) is DENIED.

14       DATED this 17th day of January 2007.

15

16  _____

17  Neil V. Wake
    United States District Judge

18

19

20

21

22

23

24

25

26

27

28